[No. B239393. Second Dist., Div. One. Oct. 31, 2012.]

In re DESTINY S., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ROSEMARIE H., Defendant and Appellant.

## COUNSEL

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Denise M. Hippach, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**ROTHSCHILD, Acting P. J.**—Rosemarie H. (Mother) appeals from orders of the juvenile court declaring her 11-year-old daughter, Destiny S., a dependent of the court under Welfare and Institutions Code section 300, subdivision (b),[1] and placing her with her maternal grandmother. There being no evidence that Destiny is under a current risk of serious physical harm, the orders are reversed.

### FACTS AND PROCEEDINGS BELOW

Destiny, age 11, and her mother came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in September 2011 when someone called the department and "alleged sexual abuse of [Destiny] by an unknown perpetrator." The local police and the DCFS investigated this allegation and concluded that it was "unfounded." In the course of the DCFS investigation, however, Mother admitted that she had a history of using methamphetamine and marijuana. She told the DCFS worker that she smokes marijuana on a weekly basis, but not around Destiny. She also told the worker that she had stopped using methamphetamine "over a year ago" but a drug test the same day came back positive.

In October 2011, the DCFS filed a petition to have Destiny declared a dependent of the court under section 300, subdivision (b) based on Mother's drug use. At the detention hearing the court left Destiny in Mother's custody and ordered Mother to submit to weekly random drug tests. When Mother tested positive for methamphetamine and marijuana the court took Destiny from Mother's custody and placed her with her maternal grandmother, where she remained at the time of the jurisdiction and disposition hearings.

The court held jurisdiction and disposition hearings in January 2012. The uncontradicted evidence at the hearings showed that Destiny was a healthy,

---

[1] All statutory references are to the Welfare and Institutions Code.

happy preteen. She told the DCFS worker that Mother "takes good care of her," tucks her in bed at night, plays video games with her and attends her volleyball games. She denied ever being physically punished or abused. She told the DCFS worker: "I want to go back with my mom." The principal of Destiny's school told the DCFS worker that she had " 'no concerns' " about Destiny, that she has no discipline issues and attends school regularly. Destiny's tardiness to school in the previous year had not reoccurred this year.

It was also undisputed that Mother had submitted to five drug tests between November 2011 and January 2012. All were negative.

After considering the foregoing evidence the court concluded that although Destiny is "well-cared for . . . [,] clean [and] well-fed" she was at risk of serious physical harm because she had often been late to class in the previous school year and her mother was in denial as to her drug habit. The court found by clear and convincing evidence that Destiny would be at risk of substantial physical harm if returned to Mother and there were no reasonable means to protect her other than removing her from Mother's custody. Destiny's placement continued with her maternal grandmother.

Mother filed a timely appeal.[2]

## DISCUSSION

### *The Evidence Does Not Support the Court's Finding of a Risk of Serious Physical Harm Resulting from Parental Neglect*

█ Under section 300, subdivision (b) the juvenile court may assert jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

Here, the court did not find that Destiny had suffered "serious physical harm or illness" but did find that "[Mother's] substance abuse endangers the child's physical health and safety, and places the child at risk of physical harm . . . and danger."[3]

---

[2] Destiny's father is not a party to this appeal.

[3] The court struck the allegation that Destiny was at risk of physical "damage."

■ The record lacks any evidence that Destiny was at risk of suffering physical harm as the result of Mother's use of illegal drugs.

### A. *Tardiness to School*

■ The court found that "when one is using drugs, one often has a difficult time being awake" and concluded, therefore, that Mother's drug use "could" have been the cause of Destiny being late to class the previous school year. Assuming that this conclusion is supported by the court's "20 years on the bench, [and] training and experience," the conclusion is irrelevant to dependency jurisdiction under section 300, subdivision (b) or any other subdivision of section 300. Although missing school is a "serious" problem, "that is not the same as saying the failure to attend school created a 'substantial risk' of suffering '*serious physical harm or illness.*'" (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388–389 [113 Cal.Rptr.2d 163], original italics.) Furthermore, the undisputed facts show that Destiny's frequent tardiness occurred in the previous school year. The principal of Destiny's school told the DCFS worker that "so far [in the current year] she is coming on time." The department's report stated that "Destiny is not exhibiting any behavioral or academic issues." Jurisdiction under section 300, subdivision (b) can exist "only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." ■ We fail to see how tardiness to school in the past can support a finding that there is a present "substantial risk" of suffering serious physical harm.

### B. *Use of Marijuana and Hard Drugs*

■ It is undisputed that a parent's use of marijuana "*without more,*" does not bring a minor within the jurisdiction of the dependency court. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 453 [90 Cal.Rptr.3d 44], original italics.) The same is true with respect to the use of hard drugs. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 817, 825–826 [2 Cal.Rptr.2d 429] [mother's cocaine use standing alone was not sufficient basis or jurisdiction under § 300, subd. (b)]; see *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 59, fn. 2 [156 Cal.Rptr. 262] [father's alcoholism alone did not support jurisdiction under § 300, subd. (b)].) Instead, the DCFS had to present evidence of a specific, nonspeculative and substantial risk to Destiny of serious physical harm. (*In re David M.* (2005) 134 Cal.App.4th 822, 830 [36 Cal.Rptr.3d 411] [jurisdiction under § 300, subd. (b), reversed where mother had continuing substance abuse problem, but there was no evidence of a specific, defined risk of harm from mother's substance abuse].)

DCFS contends it produced "more" than just evidence of Mother's drug use.

It points to Destiny's statement to a DCFS worker that although she has never seen "the other thing that mother smokes" sometimes she can smell it "but it's not very much."[4] Based on this ambiguous statement, the DCFS proclaims it has produced "direct evidence mother failed to protect Destiny from the negative effects of secondhand smoke." We disagree. No evidence suggested that Destiny was at risk of imminent physical harm caused by the secondhand smoke from Mother's use of marijuana. In any event, the logical consequence of the department's argument would be to remove minor children from the homes of all smokers in Los Angeles County—regardless of what they smoke. We know of no legal support for this proposition.

DCFS next refers us to a report it received in 2002, when Destiny was one year old, alleging that Mother was using methamphetamine and left Destiny unattended for long periods of time, did not bathe or feed her and that Destiny drank alcohol that Mother left within her reach. The department's investigation at the time showed that Destiny was in the care of her paternal grandmother, who was willing to care for her. The referral was closed on the basis that the "situation stabilized."[5]

Evidence of such conduct that may have occurred nine years before the petition under review was filed cannot support jurisdiction under section 300, subdivision (b), which requires proof of a current risk to the child. (See discussion, *ante*, at p. 1003.) There is no evidence in this case that Mother's drug use caused her to neglect Destiny. On the contrary, the undisputed evidence showed that at the time of this petition Destiny's home was "neat and clean," Destiny had her own bedroom "which was nicely decorated," no drug paraphernalia was observed in the home and the refrigerator and cabinets were stocked with "an adequate amount of food and all of the utilities were in proper working order." It was also undisputed that Destiny "has no behavioral or discipline issues and attends school regularly" and wanted "to go back with [her] mom." As to the allegation that Mother left alcohol where one-year-old Destiny could reach it, 11-year-old Destiny "was old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life." (*In re Rocco M., supra,* 1 Cal.App.4th at p. 825.) Finally, at the time of the jurisdictional hearing Mother had tested clean for marijuana and methamphetamine for three months.

---

[4] Presumably the "other thing" was marijuana.

[5] The DCFS claimed in a report to the court in this case that the above allegations against Mother were "substantiated" but this appears incorrect because the department also states in the same report: "Referral closed as situation stabilized," and stated in a another report to the court in this case that: "The family has no prior DCFS/Juvenile Court cases."

### C. *Section 300.2*

■ Finally, the DCFS attempts to justify jurisdiction based on section 300.2 which states: "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." Section 300, subdivision (b), however, requires a showing of a risk of serious physical harm resulting from Mother's substance abuse. Thus, the "negative effects" referenced in section 300.2 must be of the sort likely to result in serious physical harm. No such negative effects have been shown in this case.

### DISPOSITION

Because the court lacked jurisdiction over Destiny, its jurisdictional order is reversed and all subsequent orders are vacated as moot. (*In re Maria R.* (2010) 185 Cal.App.4th 48, 71 [109 Cal.Rptr.3d 882].)

Chaney, J., and Johnson, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 13, 2013, S207233.