Filed 4/27/16  In re Anthony V. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Anthony V. et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ROGER V., Defendant and Appellant. | B264036 (Los Angeles County Super. Ct. No. DK08787) |

APPEAL from an order of the Superior Court of Los Angeles County, Timothy R. Saito, Judge.  Affirmed.

Nancy E. B. Nager, under appointment by the Court of Appeal, for Defendant and Appellant Roger V.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

In this dependency action, Roger V. (father) appeals from an order finding his sons, Anthony V. and Andre V., to be persons described by section 300 of the Welfare and Institutions Code,[1] dismissing the case, and releasing them to the custody of both parents under the informal supervision of the Los Angeles County Department of Children and Family Services (Department).  (§ 360, subd. (b).)  The order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2014, Roger V. and Y.M. (mother) were living with their sons, Anthony (born in 2001) and Andre (born in 2007), at the home of the children's maternal grandmother (Myra) and maternal great aunt (Rosa).  Police were called when Myra and Rosa had a loud and violent argument in which the parents intervened.  Later that day, the Department received an anonymous report that Anthony and Andre were suffering from "emotional abuse and general neglect" (this allegation was not substantiated and is not at issue on appeal), that mother and father smoked methamphetamine in a car outside their house, and that the boys had access to methamphetamine.

Department social worker Simone Williams interviewed the parents about the drug allegations.  Although father admitted prior use of methamphetamine, he denied current use.  After being asked to take a drug test, he admitted using methamphetamine the day before at his "dealer's home."  The revelation was a surprise to mother, who said she felt "betrayed" because father had promised "he would not use anymore."  Both parents agreed not to leave the children alone with father.

Williams interviewed the children individually.  Anthony denied witnessing any substance abuse in the home or by any family members.  Andre also denied witnessing any substance abuse.

The next day, father tested positive for methamphetamine and amphetamine.  Mother tested negative.

---

[1] All further statutory references are to the Welfare and Institutions Code.

At a team decision making meeting, mother said she was "shocked" about father's relapse. Mother admitted she is unable to discern when father is "under the influence." Father stated that not even "law enforcement" would be "able to tell that he was under the influence," because methamphetamine does not affect his appearance or cognitive abilities. He agreed to temporarily leave home and enroll in a substance abuse program.

The Department filed a dependency petition on behalf of Anthony and Andre. (Welf. & Inst. Code, § 300.) Three counts focused on the domestic violence incident between Myra and Rosa (counts a-1, b-3, and b-4); these were dismissed after mother moved elsewhere with the children. Count b-1, which pertained to mother's drug use, also was dismissed after she consistently tested negative.

Count b-2, the remaining count, pertained to father's drug use. It alleged that he had a history of substance abuse including marijuana and was a current abuser of methamphetamine, which rendered him incapable of providing the children with regular care and supervision. It stated that on unspecified prior occasions, father was caring for the children while under the influence of illicit drugs, and that he tested positive for amphetamine and methamphetamine on December 9, 2014. It alleged that his illicit drug abuse endangered the children's physical health and safety and placed them at risk of physical harm and damage. (§ 300, subd. (b).)

Finding there was a prima facie case for detaining the children under count b-2, the juvenile court released them to the home of mother. The Department was ordered to provide appropriate services, with father to have monitored visits.

The parents enrolled in a random drug testing program, and father tested negative on December 30, 2014. Williams received information from Anthony's school that he had "good" grades, dressed appropriately, had no apparent injuries, worked well in class, and appeared "to have confidence & support." Andre was described by his teacher as "one of my best students academically" and "a role model in citizenship."

At a January 2015 hearing, father was granted unmonitored visits subject to continued negative drug tests. The Department was granted discretion to allow him to move back home. The juvenile court suggested that the Department consider a voluntary

3

services contract under section 301,[2] and continued the jurisdictional hearing for two months.

Father tested negative for drugs on January 16 and 27, but did not appear for a test on February 5, 2015. He had a negative test on February 20, 2015.

At the March 4, 2015 jurisdictional hearing, the Department opposed a voluntary services contract (§ 301) on the grounds that neither parent had enrolled in any of the suggested counseling programs, and that father recently had missed a drug test, which counted as a positive test. The Department expressed concern that father had admitted to "almost daily" use of methamphetamine in 2006, which constituted "heavy" use, and had admitted to a "relapse."

Father's counsel sought dismissal of count b-2, arguing that father had tried to contact the Department the night before the missed test, but the system was "down." Counsel denied the children were at risk of harm. He argued there was no evidence that father had used drugs in the presence of the children, that all of father's prior drug use had occurred at work, and that by the time he came home from work the children were asleep. Counsel for the children and counsel for mother also requested dismissal of count b-2.

---

[2] Section 301, subdivision (a) provides: "In any case in which a social worker, after investigation of an application for petition or other investigation he or she is authorized to make, determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the social worker may, in lieu of filing a petition or subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child. If a program of supervision is undertaken, the social worker shall attempt to ameliorate the situation which brings the child within, or creates the probability that the child will be within, the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services pursuant to Sections 16506 and 16507.3, within the time periods specified in those sections. No further child welfare services shall be provided subsequent to these time limits. If the family has refused to cooperate with the services being provided, the social worker may file a petition with the juvenile court pursuant to Section 332. Nothing in this section shall be construed to prevent the social worker from filing a petition pursuant to Section 332 when otherwise authorized by law."

4

In summarizing the evidence, the court noted that father admitted "using meth to treat his stress"; there was no evidence that his stress has been adequately addressed; although father had several clean tests, there were stressors in this case that may necessitate or may prompt usage; father admitted keeping methamphetamine in his truck and there was no evidence he had stopped doing so; and father sometimes got off at 3:00 p.m. when the children were home. Finding there was evidence that father had an unresolved drug problem, the court sustained count b-2.

In view of the family's ineligibility for voluntary services under section 361.5 based on father's resistance to drug treatment, the court proposed a disposition under section 360, subdivision (b). That statute provides: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."[3]

Counsel for the children voiced no objection to dismissal of the case under section 360, subdivision (b). Father's counsel argued that count (b)(2) should be dismissed, but agreed to a dismissal with informal supervision under section 360, subdivision (b). Mother's counsel agreed to the dismissal with supervision, pointing out that mother was receiving family preservation services and would benefit from additional services.

Over the Department's objection to returning the children to father's custody, the juvenile court released the children to both parents and dismissed the case under section 360, subdivision (b). Father timely appealed. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1261 [disposition order for informal supervision under § 360, subd. (b) is appealable].)

---

[3] According to subdivision (a) of section 301, services may be provided within the time periods specified in sections 16506 (allowing family maintenance services for six-month periods, which may be extended) and 16507.3 (maximum period of child welfare services is 180 days).

## DISCUSSION

Father challenges the sufficiency of the evidence to support the juvenile court's jurisdictional finding under section 300, subdivision (b). He relies on cases in which an appeal had been taken from an order sustaining dependency jurisdiction over the children—such as *In re Rebecca C*. (2014) 228 Cal.App.4th 720, *In re Drake M*. (2012) 211 Cal.App.4th 754, and *In re Destiny S.* (2012) 210 Cal.App.4th 999. Those cases are distinguishable. Unlike those decisions, in this case there was a dismissal—the case is not one in which the juvenile court continued to assert jurisdiction where none existed.

In reviewing the juvenile court's findings, we examine "'the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.' [Citations.]" (*In re Kadence P*. (2015) 241 Cal.App.4th 1376, 1384.)

The findings of the juvenile court are supported by substantial evidence. The record shows the Department was unwilling to provide services under section 361.5 based on father's resistance to drug abuse treatment—he admitted to "almost daily" use of methamphetamine in 2006, which the Department viewed as heavy use; he admitted to a recent "relapse," followed by a missed test that counted as a positive test; and he did not attend recommended counseling programs that were available and accessible to him. Based on the evidence of father's resistance to treatment, we find substantial support in the record for the trial court's determination that dismissal of the case and a return to parental custody would be most safely effected by providing informal services to the family. (§ 360, subd. (b).)

Underlying the trial court's jurisdictional ruling is the reasonable presumption that a parent's longstanding drug use is detrimental to the child, because over time, drug use can increase and become more dangerous. (See, e.g., § 361.5, subd. (b)(13) [court may bypass reunification services based on finding, by clear and convincing evidence, that parent has history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period

6

immediately prior to filing of petition that brought child to court's attention].)  For this reason, being actively resistant to drug abuse treatment has serious implications in the dependency context.

By allowing father to return home, the court acknowledged there is hope his drug problem will improve, and by requiring the Department to provide informal supervision, which mother welcomed, the court improved the chances of a better outcome for the family.  The dismissal of the case under section 360, subdivision (b) was not an abuse of discretion.

## DISPOSITION

The jurisdictional findings and order dismissing the case under section 360, subdivision (b) are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

7